WESTAR ENERGY, INC. and Kansas City Board of Public Utilities, Unified Government of Wyandotte County, Kansas City, Kansas, Petitioners

v.

ENVIRONMENTAL PROTECTION AGENCY, Respondent

Environmental Defense Fund and Sierra Club, Intervenors.

Nos. 11–1333, 12–1019.

United States Court of Appeals, District of Columbia Circuit.

May 26, 2015.

Dennis Lane, Washington, DC, for Petitioners.

David S. Gualtieri, John Charles Cruden, U.S. Department of Justice, Washington, DC, for Respondent.

Before GARLAND, Chief Judge, TATEL, Circuit Judge, and SENTELLE, Senior Circuit Judge.

*JUDGMENT*

PER CURIAM.

These petitions for review were considered upon the briefs of the parties and the record from the Environmental Protection Agency. See FED. R.APP. P. 34(a)(2); D.C.CIR. RULE 34(j). The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. See D.C. CIR. RULE 36(d). It is

**ORDERED AND ADJUDGED** that the petitions for review be denied for the reasons stated below.

The State of Kansas, the Kansas City Board of Public Utilities, and Westar Energy, Inc. petition this Court to review EPA's final action in *Approval and Promulgation of Air Quality Implementation Plan; Kansas; Final Disapproval of Interstate Transport State Implementation Plan Revision for the 2006 24–hour $PM_{2.5}$ NAAQS*, 76 Fed.Reg. 43,143 (July 20, 2011) ("*Kansas SIP Disapproval*"). In this final action, EPA disapproved of Kansas's proposed State Implementation Plan revision for the 2006 $PM_{2.5}$ (fine particulate matter) national ambient air quality standards. We will deny the petitions for the reasons stated below.

Good neighbor obligations under the Clean Air Act, 42 U.S.C. §§ 7401–7671q, and its implementing regulations require states to place emissions controls on specified pollutants (in this case, nitrogen oxide ($NO_x$) and sulfur dioxide ($SO_2$)) that contribute significantly to downwind pollution in other states. Under the Act, EPA promulgates national ambient air quality standards (NAAQS) that are science-based levels of certain pollutants permissible in the ambient air. See 42 U.S.C. §§ 7408–09. States have the initial responsibility to adopt State Implementation Plans (SIP) that are adequate to maintain, and where needed improve, air quality by applicable deadlines. States must revise their SIPs within three years after EPA promulgates new or revised NAAQS. See id. § 7410(a). Once a state submits a SIP, EPA conducts a completeness review. See id. § 7410(k)(1)(B). If EPA determines that a SIP does not meet all of the Clean Air Act's applicable requirements, it may issue a conditional, partial, or full disapproval. See id. §§ 7410(k)(2)-(4). The Act also requires EPA to promulgate a Federal Implementation Plan (FIP) if EPA finds a state either failed to submit a SIP or

submitted an inadequate SIP. *See id.* § 7410(c)(1).

In 2005, EPA promulgated a more comprehensive rule for the interstate transport of pollutants, the Clean Air Interstate Rule (CAIR), which addressed $NO_x$ and $SO_2$ contributions to nonattainment of certain air quality standards. *Rule to Reduce Interstate Transport of Fine Particulate Matter and Ozone (Clean Air Interstate Rule); Revisions to Acid Rain Program; Revisions to $NO_x$ SIP Call,* 70 Fed.Reg. 25,162, 25,171 (May 12, 2005). This Court found CAIR to be insufficiently stringent, but kept it in place as an interim measure. *North Carolina v. EPA,* 531 F.3d 896, 929–30 (D.C.Cir.2008); *North Carolina v. EPA,* 550 F.3d 1176, 1178 (D.C.Cir.2008) (per curiam). In response, EPA promulgated the Cross–State Air Pollution Rule (also known as the "Transport Rule"). *Federal Implementation Plans; Interstate Transport of Fine Particulate Matter and Ozone and Correction of SIP Approvals,* 76 Fed.Reg. 48,208 (Aug. 8, 2011). The Transport Rule identifies states with emissions that significantly contribute to nonattainment or interference with maintenance of NAAQS in downwind states, establishes trading programs with emissions budgets for covered power plant electric generating units (EGUs), promulgates FIPs that allocate emissions allowances among those EGUs, and imposes other requirements to achieve necessary reductions. *See id.* at 48,208.

Upon petition by several states and utilities, this Court vacated and remanded the Transport Rule. *EME Homer City Generation, L.P. v. EPA,* 696 F.3d 7 (D.C.Cir. 2012). The Court held that the Transport Rule exceeded EPA's authority under the Clean Air Act's good neighbor provision by overemphasizing cost in allocating responsibility among upwind contributors, *id.* at 19–28, and that EPA lacked statutory authority to promulgate FIPs without first giving the states an opportunity to issue SIPs implementing the required emissions reductions, *id.* at 28–37. The Supreme Court reversed and remanded. *EPA v. EME Homer City Generation, L.P.,* —— U.S. ——, 134 S.Ct. 1584, 188 L.Ed.2d 775 (2014). The Supreme Court held that the Clean Air Act does not require EPA to give states that missed the deadline or submitted inadequate good neighbor SIPs a second opportunity to submit SIPs after EPA has quantified their good neighbor obligations. *Id.* at 1609–10. The Court also held that "nothing in the statute places EPA under an obligation to provide specific metrics to States before they undertake to fulfill their good neighbor obligations" and submit a SIP. *Id.* at 1601. The Court further held that EPA's use of cost-effectiveness in determining states' obligations "is a permissible, workable, and equitable interpretation of the Good Neighbor Provision." *Id.* at 1610.

In April 2010, Kansas submitted its revised SIP to address Kansas's emissions of $SO_2$ and $NO_x$, which asserted that "Kansas emissions do not significantly interfere with the achievement or maintenance of the NAAQS in downwind states." *Revision to the Kansas Air Quality State Implementation Plan for Implementation, Maintenance and Enforcement of the National Ambient Air Quality Standards: 2006 24–hour $PM_{2.5}$ NAAQS* at 7 (Apr. 2010) ("*Kansas SIP Revision*"). The SIP contained approximately one page of discussion of interstate transport and focused on Kansas's efforts under a separate federal program to protect visibility in national parks (the "Regional Haze" program) and expected emissions reductions resulting from Kansas's compliance with that program. *Id.* at 6–7.

In March 2011, EPA proposed to disapprove Kansas's good neighbor SIP. *Ap-*

*proval and Promulgation of Air Quality Implementation Plan; Kansas; Proposed Disapproval of Interstate Transport State Implementation Plan Revision for the 2006 24–Hour PM$_{2.5}$ NAAQS,* 76 Fed.Reg. 14,831 (Mar. 18, 2011). EPA determined that Kansas's submission lacked the required technical analysis evaluating whether the projected emissions reductions under the Regional Haze program would prevent Kansas from contributing to nonattainment and maintenance problems in downwind states. EPA also noted that, contrary to Kansas's assertions regarding its projected emissions reductions, EPA's "preliminary photochemical modeling for the proposed Transport Rule ... indicates that the emissions from the State of Kansas significantly contribute to nonattainment and interfere with maintenance in other States." *Id.* at 14,833.

In July 2011, EPA took final action and disapproved of Kansas's proposed SIP revision. *Kansas SIP Disapproval,* 76 Fed. Reg. at 43,143. For the reasons stated below, we will deny the petitions to review this final agency action.

The standard of review in this case is provided by the Administrative Procedure Act, 5 U.S.C. § 706. We may only set aside EPA's disapproval of Kansas's proposed SIP if EPA's action is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). An agency decision regarding technical matters within its area of expertise warrants particular deference. *See Baltimore Gas & Elec. Co. v. NRDC,* 462 U.S. 87, 103, 103 S.Ct. 2246, 76 L.Ed.2d 437 (1983); *W. Virginia v. EPA,* 362 F.3d 861, 867–68 (D.C.Cir.2004).

EPA acted well within the bounds of its delegated authority when it disapproved of Kansas's proposed SIP. Under 42 U.S.C. § 7410(a)(2)(D)(i), SIPs must include "adequate provisions" prohibiting in-state sources from contributing significantly to downwind nonattainment. EPA has the authority to determine whether SIPs comply with the statutory requirements. *See id.* § 7410(k)(3). EPA issued guidance, in advance of Kansas's submission, that "the state's submission must explain whether or not emissions from the state" significantly contribute to nonattainment in other states, and, if so, "address the impact." William T. Hartnett, Director, Air Quality Policy Division, *Guidance on SIP Elements Required Under Sections 110(a)(1) and (2) for the 2006 24–hour Fine Particle (PM$_{2.5}$) National Ambient Air Quality Standards (NAAQS)* at 3 (Sept. 25, 2009). EPA's guidance also stated that a state's conclusion "must be supported by an adequate technical analysis." *Id.*

The discussion of interstate transport in Kansas's SIP was only one page long and failed to provide any analysis at all of the downwind effect of its in-state emissions. *See Kansas SIP Revision* 6–7. Although the discussion described anticipated emissions reductions by four utility companies, it failed to acknowledge that other sources would continue to generate emissions, let alone to analyze their downwind effect. *Id.* To show compliance with the Clean Air Act's Good Neighbor Provision, Kansas largely relied on the emissions controls undertaken as part of the Regional Haze program. But Kansas's good neighbor obligations are not coextensive with its obligations under the Regional Haze program. *Id.* at 7. The Regional Haze program is directed at different ends than the Good Neighbor Provision (visibility in parks for Regional Haze versus public health for the Good Neighbor Provision), involves different areas (national parks for Regional Haze versus all downwind areas, but especially cities, for Good Neighbor), and involves the consideration of different factors. EPA was not arbitrary or capricious

in concluding that Kansas's submission failed to satisfy its good neighbor obligations.

On petition for review, the petitioners do not make persuasive arguments to the contrary. Several of their arguments were simply not presented in Kansas's SIP submission. For example, Kansas never said that its conclusion was based on the fact that it did not contribute significantly to downwind nonattainment of the 1997 NAAQS. Moreover, several of the petitioners' remaining arguments, including their principal complaint that EPA failed to promulgate a rule defining their SIP obligations in advance, are identical to arguments that the Supreme Court rejected last year. *See EME Homer City*, 134 S.Ct. at 1601 ("[N]othing in the statute places EPA under an obligation to provide specific metrics to States before they undertake to fulfill their good neighbor obligations."). As stated by the Supreme Court in *EME Homer*, EPA is not required to "quantif[y] an upwind State's good neighbor obligations" or "furnish upwind States with information of any kind about their good neighbor obligations before a FIP issues." *Id.* Thus, we will deny the petitions to review the *Kansas SIP Disapproval.* 76 Fed.Reg. 43,143.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate herein until seven days after resolution of any timely petition for rehearing or petition for rehearing *en banc. See* FED. R.APP. P. 41(b); D.C.CIR. RULE 41.